No. 25,207.

P. G. ABELL, *Appellee*, v. MISSOURI PACIFIC RAILROAD COMPANY, *Appellant*.

### SYLLABUS BY THE COURT.

1. CARRIERS — *Carriage of Live Stock — Liability for Injury*. In an action against a carrier for the death of cattle in transit in interstate commerce, where it is proved the shipment was made under a written contract, it is error to reject an offer of the contract in evidence and try the case as though none had been issued, although the issuance or contents of the contract was not pleaded by either party.

2. SAME—*Action for Injury—Owner Assuming Care of Live Stock—Burden of Proving Negligence*. Where under a contract for the shipment of cattle the shipper or his agent accompanies them in order to give them such care as they require, he has the burden of showing that any loss for which he sues was due to the negligence of the carrier.

Appeal from Ness district court; ROSCOE H. WILSON, judge. Opinion filed March 6, 1926. Reversed.

*W. P. Waggener, O. P. May,* both of Atchison, and *A. S. Foulks,* of Ness City, for the appellant.

*Robert C. Mayse,* of Ashland, for the appellee.

The opinion of the court was delivered by

MASON, J.: P. G. Abell shipped cattle from Ransom, Kan., to Kansas City, Mo., by the Missouri Pacific railroad. Eleven of them died in transit. He brought this action for their value against the railroad company and recovered a judgment, from which it appeals.

The defendant complains of the rejection of its offer to introduce in evidence the written contract under which the shipment was made and of an instruction that the burden was upon it to prove the cattle did not die as a result of its negligence. It contends that inasmuch as in accordance with the contract caretakers representing the shipper accompanied the cattle, the burden was on the plaintiff to show that the loss was due to its negligence.

To this the plaintiff responds by saying in effect that the petition sought recovery upon the common law liability of the defendant for failing to deliver the cattle it had received for shipment regardless of any question of negligence, and in order to raise that issue it was

Carriers, 10 C. J. pp. 369 n. 28, 472 n. 2, 480 n. 89; 17 L. R. A. 339, 39 L. R. A. n. s. 640; L. R. A. 1915D, 658; 18 A. L. R. 1116; 4 R. C. L. 995.

necessary for the defendant to plead and prove the character of the contract under which the shipment was made; that although the defendant offered in evidence the written contract the court rightly ruled it out because it had not been pleaded. The defendant's answer in addition to a general denial merely alleged that the death of the cattle was not due to its negligence, but to hemorrhagic septicæmia, which was inherent in the cattle.

We hold the court should have admitted the contract in evidence for these reasons: The plaintiff did not plead, and of course could not have pleaded, that there was no written contract of shipment. There would seem to be a presumption that a bill of lading was given, but we regard that as quite immaterial in view of what took place. In the course of his examination in chief—although in response to a question by the defendant's counsel which he answered without objection—the plaintiff said a live-stock contract had been issued. Because of the fact, thus shown, of the existence of a written contract, the court sustained an objection of the defendant to evidence offered by the plaintiff of a conversation he had had with the station agent concerning billing the cattle out. The fact having been thus definitely established that the shipment was made under a written contract the trial should not have proceeded upon the theory that such was not the case; and with or without an amendment to the defendant's answer the writing should have been admitted in evidence. The situation is similar to that presented in *Salmans v. Railway Co.,* 111 Kan. 297, 206 Pac. 1111, where it was said a valid provision of the contract of shipment should be enforced "regardless of the forms of pleading involved," the opinion quoting this language from *Kalina v. Railroad Co.,* 69 Kan. 172, 76 Pac. 438:

"That in this case the shippers did not, in their bill of particulars, count upon this contract, or that the carrier did not plead it in defense, can make no difference."

The circumstance that in the present case the existence of a written contract was developed from the testimony of the plaintiff, and not from the pleadings, does not prevent the application of the same principle.

These considerations are the weightier because under the system now in vogue the terms of shipment, whether interstate or otherwise, are controlled by the official tariffs—the schedules of rates and regulations on file with the commission having control of the matter

Abell v. Missouri Pac. Rld. Co.

—discrimination of any sort between shippers is forbidden, and a carrier is not permitted to waive any of its rights to the advantage of an individual. (*Abell v. Railway Co.*, 100 Kan. 238, 164 Pac. 269; *Phillips v. Grand Trunk Ry.*, 236 U. S. 662, 667; *Georgia, Fla. & Ala. Ry. v. Blish Co.*, 241 U. S. 190, 197.) The practice of trying a claim against the carrier upon a theory directly contrary to the established and admitted facts, if permitted, would afford a ready means of evading that equality of treatment which is required in both interstate and local commerce. (*Mollohan v. Railway Co.*, 97 Kan. 51, 154 Pac. 248.)

2. The instruction concerning negligence should have been adapted to the actual situation. Where under the contract of shipment the shipper or his representative accompanies cattle in transit to give them such care and attention as they require he has the burden of showing that any loss for which he sues was due to the negligence of the carrier. (10 C. J. 381; 4 R. C. L. 995.) Here the court instructed that the burden was on the defendant to prove the cattle did not die as the result of its negligence or of any unusual delay, and that they died of hemorrhagic septicæmia; that unless it had so proved the verdict should be for the plaintiff. This instruction was erroneous for the reason already indicated and is also subject to criticism because it seems to require a verdict against the defendant unless the jury finds it to have been free from negligence and also finds the death of the cattle to have been due to the disease named.

The judgment is reversed for a new trial.

HARVEY, J., not sitting.